UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD PAUL POWELL,

                                    Case No. No. 18-11338

          Plaintiff,                      District Judge Mark A. Goldsmith

v.                                    Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Donald Paul Powell ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #8] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #11] be DENIED.

# I.  PROCEDURAL HISTORY

On March 4, 2015, Plaintiff applied for DIB, alleging disability as of October 31, 2014 (Tr. 163).   After the initial denial of the claim, Plaintiff requested an administrative hearing, held on March 21, 2017 in Lansing, Michigan (Tr. 48).  Administrative Law Judge ("ALJ") Amy L. Rosenberg presided.  Plaintiff, represented by Bryan Christie, testified, as did Vocational Expert ("VE") Joanne Pfeiffer (Tr. 52-64, 64-70).   On June 14, 2017, ALJ Rosenberg determined that Plaintiff was capable of a significant range of unskilled, exertionally light work (Tr. 10-17).   On February 27, 2018, the Appeals Council  denied review of the administrative decision (Tr. 1-3).  Plaintiff filed suit in this Court on April 30, 2018.

# II.  BACKGROUND FACTS

Plaintiff, born July 31, 1969, was 47 at the time of the administrative decision (Tr. 17, 163).   He completed 11th grade and worked previously as a roofer (Tr. 177).  He alleges disability as a result of a herniated disc, left knee surgery, and right arm numbness (Tr. 176).

## A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He stood 5' 7" and weighed 146 pounds (Tr. 52).  He was right-handed (Tr. 52). Plaintiff lived with his wife and four-year-old son (Tr. 52).  He received food stamps and medical care (Tr. 53).  His driver's license was suspended four years earlier for a DUI (Tr. 53).  He relied on his wife for transportation (Tr. 53).

He did not attend school after 11th grade and did not receive vocational training (Tr 53).  Up until the alleged onset of disability, he worked as a roofer (Tr. 53).  He was unable to work due to cervical spine pain, noting that he was required to use a TENS unit on his back, then recline for 15 minutes approximately every two or three hours (Tr. 54).  He reclined at least six times a day for up to 45 minutes at a time (Tr. 59).  His pain was exacerbated by going over "bumps" as a car passenger, sitting for more than 20 minutes, and standing for more than 10 (Tr. 54, 57).  He avoided climbing stairs (Tr. 58).  He could kneel but not bend (Tr. 58).  He experienced problems gripping with the right hand (Tr. 58).  He did not have problems with fine manipulative activity (Tr. 59).  He was unable to turn his neck and experienced pain, weakness, and tingling in the right arm and left leg (Tr. 55).  He took Norco for pain and Prozac for depression and anxiety (Tr. 56).  He experienced mood changes and concentrational limitations due to pain (Tr. 56).  He was unable to perform household chores for more than a few minute at a time (Tr. 56).  He was unable to garden or mow the lawn (Tr. 56).

Plaintiff's roofing business was started by his father (Tr. 60).  Plaintiff was depressed because he was no longer able to provide for his family (Tr. 62).  He did not know how to use a computer or a smart phone (Tr. 64).  He did not know how to keep books for his company (Tr. 64).  Prior to the allegedly disabling neck problem, he had experienced injuries but had returned to work (Tr. 61).  After the 2013 onset of neck problems, he attempted to improve his condition with physical therapy (Tr. 61).  The therapy made his condition worse

(Tr. 61).  After failing to obtain relief from therapy, he underwent cervical spine surgery (Tr. 61).  His neck movements were now limited to turning slightly to the left (Tr. 61).

### B.  Medical Records

#### 1.  Records Related to Plaintiff's Treatment

March, 2015 records by Michael Martone, M.D. note Plaintiff's report of right arm numbness with level "eight" pain on a scale of one to ten (Tr. 335, 339).  April, 2015 records by Alliance Neurosurgery note Plaintiff's report of severe and worsening right neck, shoulder, and arm pain with decreased right hand strength (Tr. 229).  Plaintiff exhibited hand tremors and a "raised area" at the back of the neck (Tr. 229).   An MRI of the cervical spine showed degenerative disc disease, moderate at C3-C4 and C4-C5 and "moderate to marked" at C6-C7 (Tr. 256).  The study also showed stenosis at multiple levels (Tr. 256).  Amritraj Loganathan, M.D. noted a history of low back pain with disc herniation, neck pain, and a medial meniscus tear of the left knee (Tr. 229-230, 251).   Dr. Loganathan noted a history of "alcohol use," noting Plaintiff's report that he drank one week before the appointment (Tr. 230).   Plaintiff displayed a normal gait but "give way" weakness in both lower extremities (Tr. 232).  He was diagnosed with myelopathy and multilevel spondylosis with a "worsening neurological deficit" (Tr. 232).  Dr. Loganathan recommended a cervical decompression and fusion at C3 to C6 (Tr. 232).   May, 2015 physical therapy intake records note muscle weakness, pain, and a limited range of left shoulder movement (Tr. 228).

In June, 2015, Plaintiff reported that physical therapy had made his condition worse (Tr. 242).  In July, 2015, Dr. Loganathan noted that Plaintiff's symptoms had "progressed" and now included weakness and numbness in both upper extremities (Tr. 234-235).  Plaintiff demonstrated a normal gait (Tr. 236).

On August 20, 2015 Plaintiff underwent an anterior cervical discectomy and fusion (Tr. 280).   Post-surgical imaging studies note a "satisfactory appearance" of the cervical fusion (Tr. 283).  Nine days following surgery,  Dr. Martone noted Plaintiff's report of reduced pain (level "four" on a scale of one to ten) and that right arm tingling had resolved (Tr. 289).  October and November, 2015 records by Harish Rawal, M.D. note that Plaintiff's condition was improving with continued level "four" pain (Tr. 354, 357).

In January, 2016, Plaintiff reported pain while moving his neck and "some weakness" in the bilateral upper extremities (Tr. 360-361).  He requested a prescription for physical therapy (Tr. 361).  March, 2016 records note Plaintiff reported improvement in his condition but continued back and neck pain with muscle weakness and increased neck pain upon movement (Tr. 363-365).  August and September, 2016 records note Plaintiff's report of moderate but constant neck pain with occasional hand and finger numbness (Tr. 368, 412, 416).  X-rays of the cervical spine from the same month showed no acute abnormalities (Tr. 371).  Notes from a September, 2016 CT of the cervical spine state that a herniated disc could not be excluded by the examination (Tr. 372).  Office notes from the same month note reduced grip strength (Tr. 376).  In November, 2016, medicine and rehabilitation specialist

Anandeep Kumar, M.D. prescribed an increased dose of Gabapentin for paresthesia and dysesethetic symptoms, topical agents, and a TENS unit for chronic neck pain with right hand numbness and tingling (Tr. 407, 411).  Plaintiff reported that he had been told not to go back to work but "did it anyway" (Tr. 407).  He admitted he drank to ease the pain, noting that Norco was "eating up his stomach" (Tr. 407).  Dr. Kumar noted reduced right upper extremity strength with an assessment of chronic Carpal Tunnel Syndrome ("CTS") (Tr. 410).

Dr. Martone's January, 2017 records note Dr. Kumar's assessment of CTS (Tr. 391). February, 2017 treating records by John J. Wald, M.D. note Plaintiff's report of moderate, chronic neck pain and stiffness resulting from cervical dystonia (Tr. 444-447).  In March, 2017, Dr. Martone completed a medical source statement, noting "partial improvement" following the August, 2015 surgery but continued neck stiffness and numbness in the right arm (Tr. 440).  He noted that Plaintiff's current medications had "the potential" for drowsiness or dizziness (Tr. 440).  He found that Plaintiff was limited to sitting or standing for 10 minutes at a time with a maximum of two hours each in an eight-hour workday (Tr. 441).  He found that due to muscle weakness and pain, Plaintiff would be required to walk for 10 minutes every hour and would require three to four unscheduled breaks each day lasting for 15 to 20 minutes (Tr. 441).  He limited Plaintiff to occasional lifting of 10 pounds and "rare" lifting of 20 pounds (Tr. 442).  He found that Plaintiff was limited to occasional manipulative activity with the dominant hand (Tr. 442).  He found that Plaintiff was capable

-6-

of "moderate stress" work but would typically be "off task" for 25 percent or more of the workday and be absent about four days each month (Tr. 443). Dr. Martone prefaced his assessment by noting that his findings were based on Plaintiff's report which seemed "reasonable" (Tr. 440). He noted that "if there are conflicts between my assessment" and a physical medical assessment, he would defer to the medical assessment (Tr. 440).

## 2. Non-Treating Records

In August, 2015, Mohammed Khaleel, D.O. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of lumbosacral and cervical strain and disc herniations (Tr. 273). (Tr. 273-279). Dr. Khaleel observed that Plaintiff could sit for 20 minutes, stand for 10, walk one block, and lift 10 pounds (Tr. 273). He noted that Plaintiff demonstrated good effort throughout the examination (Tr. 274). Plaintiff had a normal gait and station but a straight-leg raise test was positive due to neck and low back pain (Tr. 274). Dr. Khaleel noted a full range of motion with stronger left than right grip strength (Tr. 276).

## C. Vocational Testimony

VE Pfeiffer classified Plaintiff's past work as a roofer as skilled and exertionally medium (heavy as performed)[1] (Tr. 70). ALJ Rosenberg then posed the following set of

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and

limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [T]he individual is limited to working at the light exertional level . . . . In addition, he would need a sit/stand option allowing him to change position between sitting or standing approximately three times per hour. He could occasionally climb ramps and stairs, but not more than a few steps at a time. He should not climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch or crawl. He could only occasionally reach overhead and frequently reach in other directions. His right upper extremity, which is the dominant extremity . . . would be limited to no more than frequent handling and fingering. He could understand, remember and carry out simple, routine tasks. Would this individual be able to perform the claimant's past work as actually or generally performed? (Tr. 65-66).

The VE testified that the above limitations would preclude Plaintiff's past relevant work as a roofer but would allow for the exertionally light, unskilled work of a cashier (86,000 positions in the national economy); collator operator (50,000); and mail sorter (45,000) as well as the sedentary unskilled work of a hand polisher (70,000); printed circuit board assembler (250,000); and telephone information clerk (400,000) (Tr. 66-67). She added if the individual were limited to *occasional* handling with the right upper extremity, all of the above jobs would be eliminated, but the exertionally light positions of furniture rental clerk (50,000) and counter clerk (250,000) and exertionally sedentary work of a call out operator (37,000) could be performed (Tr. 68-69). The VE testified that if the same

---

that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

individual were required to take three to four unscheduled work breaks for 15 to 20 minutes each workday, all competitive employment would be eliminated (Tr. 69). The VE testified that the need to miss four or more days of work each month, or, be off task 25 percent or more of the workday would also preclude all competitive employment (Tr. 70). The VE stated that her testimony regarding excessive work breaks and absenteeism was based on her own professional experience but was otherwise based on the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 73).

### D. The ALJ's Determination

Citing the medical transcript, ALJ Rosenberg found that Plaintiff experienced the severe impairments of "degenerative disc disease" but that the condition did not meet or medically equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12). She found that the condition of depression was "non-severe" (Tr. 12). She found that Plaintiff experienced only mild restriction in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing himself (Tr. 12).

ALJ Rosenberg determined that Plaintiff had an RFC for light work with the following restrictions:

> [H]e needs a sit/stand option allowing him to change position between sitting and standing approximately three times per hour. He can occasionally climb ramps and stairs, but not more than a few steps at a time; he should not climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can only occasionally reach overhead and can frequently reach in other directions. With his right upper extremity, he is limited to no more

than frequent handling and fingering.  He can understand, remember and carry out simple routine tasks (Tr. 13).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform the light work of a cashier, collator operator, and mail sorter (Tr. 16, 66-67).

 The ALJ discounted Plaintiff's professed degree of physical and psychological limitation.  She found that the August, 2015 cervical discectomy and fusion was successful and that post-operative findings included good upper extremity strength and normal neurological signs (Tr. 14).  The ALJ gave only "parital weight" to Dr. Martone's opinion that Plaintiff was limited to lifting 10 pounds and standing/walking two hours in an eight-hour workday, noting that Dr. Martone  had completed the assessment with Plaintiff's help and "'would defer to a physical medicine assessment if one were done and if it conflicted with'" his assessment (Tr. 15, 440).  The ALJ concluded that Dr. Martone's statement "reflected [Plaintiff's] subjective complaints more than [the physician's] objective opinion" and that Dr. Martone's statement that he would defer to a physical medicine assessment "indicates that he is not that firmly convinced of these limitations" (Tr. 15).

## III.    STANDARD OF REVIEW

 "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed.

126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a), 416.920(a).  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *Id.*  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff makes three arguments in favor of remand, contending first that the ALJ erred by discounting Dr. Martone's March, 2017 treating assessment.  Next, he disputes the ALJ's contention that the physical problems were largely resolved after the August, 2015 discectomy

and fusion, contending that the RFC does not account for the more recent records showing that the neck condition continued to cause physical limitations inconsistent with the ability to perform exertionally light work.  Third, he argues that the ALJ failed to provide a basis for rejecting his testimony of disabling symptomology.

## A. The Treating Physician Analysis

Plaintiff argues that the ALJ erred by according only "partial" weight to Dr. Martone's March, 2017 assessment.  *Plaintiff's Brief,* 13-17, *Docket #8,* Pg ID 493 (*citing* Tr. 15).  Specifically, he contends that the ALJ's rejection of the treating physician's findings were not well explained or supported.  *Id.* at (*citing* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[2].

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of*

---

[2]

The administration rescinded SSR 96-2p on March 27, 2017.  *See Rescission of Social Security Rulings* 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017).  Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record.  20 C.F.R. §§ 404.1520b; 416.920c.  The "new rules, however, apply only to claims filed on or after March 17, 2017." *Hancock v. CSS*, 2017 WL 2838237, at *8 (W.D.Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017)).  Because current Plaintiff filed his claim well before March 17, 2017, SSR 96-2p applies.

*Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)). In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; § 404.1527(c); SSR 96–2p at *5. In declining to give less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

As discussed more fully in Section II.B.1., *above,* Dr. Martone completed a medical source statement finding that Plaintiff was limited to sitting or standing 10 minutes at a time with a maximum of only two hours each in an eight-hour workday; needed to walk for 10 minutes every hour; would require three to four unscheduled breaks each day lasting for 15 to 20 minutes; and was limited to occasional lifting of 10 pounds and "rare" lifting of 20 pounds (Tr. 441-442). He found further that Plaintiff was limited to occasional manipulative activity with the dominant hand and would typically be "off task" for 25 percent or more of the workday (Tr. 442-443). Dr. Martone prefaced his assessment by noting that his findings were based on Plaintiff's report which he deemed "reasonable" (Tr. 440). He noted that "if there are conflicts between my assessment" and a physical medical assessment, he would defer to the medical assessment (Tr. 440).

The ALJ provided the following rationale for according only "partial weight" to the treating assessment:

> Dr. Martone indicated he completed [his] statement with the claimant's input, and that he would defer to a physical medicine assessment if one were done and if it conflicted with this statement. Thus, it appears that Dr. Martone's statement reflected the claimant's subjective complaints more than Dr. Martone's objective opinion. And the doctor's statement that he would defer to a physical medicine assessment indicates that he is not that firmly convinced of these limitations (Tr. 15).

It is well settled that a physician's restatement of a claimant's subjective allegations, with nothing more, does not constitute an "opinion" as defined by § 404.1527. *See Francis v. Commissioner Social Sec. Admin.*, 414 Fed.Appx. 802, 804, 2011 WL 915719, at *2 (6th Cir. March 16, 2011)(treating physician's "pain-related statement . . . is not a 'medical opinion' at all—it merely regurgitates Francis's self-described symptoms"). *See Moran v. Commissioner of Social Sec.*, 40 F.Supp.3d 896, 916 (E.D.Mich. 2014)(*citing Masters v. Astrue*, 818 F.Supp.2d 1054, 1067 (N.D.Ill.2011)("'An ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on [a claimant's] assertions'").

Notwithstanding, the ALJ erred by rejecting Dr. Martone's findings on the sole basis that they were drawn from Plaintiff's self-assessment. While Dr. Martone acknowledged that he relied on Plaintiff's alleged limitations in making his finding, he noted that the professed limitations were "reasonable." Dr. Martone's finding that the allegations were "reasonable" (in other words, not incredible) were presumably not made out of thin air. Dr.

Martone's treating relationship with Plaintiff predated the assessment by at least two years; he saw Plaintiff on a regular basis; and his records include findings made by the neurological surgeon and physical medicine and rehabilitation specialist Dr. Kumar.  Moreover, the fact that Dr. Martone qualified his findings by stating that he would defer to the results of a specialist's physical assessment cannot reasonably be interpreted to undermine his own expertise or Plaintiff's description of his own limitations - particularly given that no other treating source found a lesser degree of limitation.  *See Haverkate v. Astrue*, 2010 WL 668284, at *9 (M.D.Fla. February 19, 2010)(family practitioner and long time treating physician's opinion entitled to deference because "she was privy to the other [] health evidence of record").  Because Dr. Martone's assessment constitutes a "opinion," the ALJ was required to use the analysis of a treating physician's opinion set forth in SSR 96–2p.

The ALJ's rejection of the assessment on the basis that it was supported only by "subjective complaints" does not satisfy the requirements of the treating physician analysis. The administrative determination contains no indication that the ALJ considered whether Dr. Martone's opinion was supported by the record or consistent with the record as a whole as required by § 404.1527(c)(3-4).   To be sure, the ALJ's findings regarding Dr. Martone's opinion is prefaced by a two-paragraph summary of the records pertaining to Plaintiff's physical condition (Tr. 14).  However, the summary as a whole appears to acknowledge that Plaintiff experienced significant upper extremity limitations before and after the August, 2015 surgery.  For example, while the ALJ cited Dr. Mohammed's August, 2015 finding of

"full strength," Dr. Mohammad noted that Plaintiff could lift 10 pounds (but not greater weights) and appeared to endorse Plaintiff's report of significant back and neck pain (Tr. 273). Further, the determination is silent as to which portions of the record support the partial rejection of Dr. Martone's assessment, making it impossible to discern which records were used to base the rejection of the treating opinion.[3] Because the ALJ failed to compare Dr. Martone's assessment to the record as a whole and did not provide "good reasons" for discounting the opinion, a remand for further proceedings is required.

### B. The RFC

In regard to the RFC, the failure to support the treating physician analysis with any reference to the medical evidence is particularly critical given that the record does not contain another assessment of Plaintiff's residual abilities by an acceptable medical source. To be sure, the fact that the record does not contain a medical assessment mirroring abilities set forth in the RFC is not fatal to the finding that he was capable of light work. *See Kendrick v. Commissioner of Social Security*, 2014 WL 1260665, at *11 (E.D.Mich. March 27, 2014)(ALJ may draw on all of the medical evidence in crafting the RFC)(*citing Collins v. Comm'r of Soc. Sec.,* 357 Fed. App'x. 663, 670 (6th Cir. December 18, 2009)). However,

---

[3] The ALJ's summary of the medical records (mostly documenting continued limitation) mentions that Plaintiff experienced a full range of motion as of March, 2016 (Tr. 14). However, the treating notes from this month cannot be read to indicate that Plaintiff's condition was resolved or that he was capable of exertionally light work. The March, 2016 records note an "active *painful* range of cervical spine motion" (Tr. 365)(emphasis added). The same records note that he was referred for physical therapy for "continued neck stiffness" and to improve "bilateral arm[] strength" (Tr. 366).

the deficiencies of the treating physician analysis also undermine the RFC for light work. The ALJ not only failed to address Dr. Martone's finding that Plaintiff was incapable of lifting more than 10 pounds on an occasional basis (consistent with sedentary work) but did not provide an explanation for the RFC for exertionally light work (requiring lifting of 20 pounds occasionally and 10 frequently) as set forth in 20 C.F.R. § 404.1567(a-b).  It is impossible to discern the basis for the light work RFC from the two-paragraph discussion of the treating evidence showing upper extremity and neck limitations throughout the relevant period; Dr. Mohammed's finding that Plaintiff could lift 10 pounds; or Dr. Martone's limitation of 10 pounds on an occasional basis (Tr. 243, 442).  "[I]t is more than merely helpful for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review.'" *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985)(punctuation omitted)(*citing Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)).

The VE testified that a significant number of jobs existed in the national economy if the RFC were altered to limit  Plaintiff to sedentary work (Tr. 13, 65-69).  However, while a determination that Plaintiff was limited to sedentary rather than light work would not change the present non-disability determination, an erroneous finding that he was capable of light work would  impact any future application for benefits.  Plaintiff, 49 at the time of this writing, will turn 50 on July 31, 2019.  Under the "Grids," an individual between the ages 50 to 55 ("closely approaching advanced age") with Plaintiff's limited education and work

background who was limited to exertionally sedentary, unskilled work  would be deemed

disabled. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.09.[4]  The present finding that he

was capable of exertionally light work would require him to show a "change in condition"

in future applications to establish that he was limited to sedentary work.  *See Earley v.

Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018)("[a]n individual may file a second

application—for a new period of time—for all manner of reasons and obtain independent

review of it *so long as the claimant presents evidence of a change in condition or satisfies

a new regulatory condition*." (Emphasis added).   Because an erroneous determination that

Plaintiff could perform light work in the present case would make it more difficult to show

that he limited sedentary work in future applications, a remand is warranted, at a minimum

for clarification of the ALJ's findings.

### C.  The Assessment of Plaintiff's Allegations

The administrative findings are also undermined by the absence of a discernible basis

for discounting Plaintiff's allegations of limitation.  *See Plaintiff's Brief* at 22-23.

SSR 16-3p sets forth the standard for evaluating the alleged limitations using a

two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines

whether the claimant has a medically-determinable impairment that could reasonably be

expected to produce the alleged pain or limitation. *Id.* at *3. Second, the ALJ must evaluate

---

[4]

The regulations state in part that "[w]e generally consider that a 7th grade through the 11th grade level of formal education is a limited education." See 20 C.F.R. § 404.1564(b)(3).

claims of limitation not reflected in the objective evidence. *Id.* at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.[5] In other words, whether the record as a whole reflects the claimant's professed degree of limitation. *Id.*

While the ALJ's finding that the condition of degenerative disc disease created some degree of work-related limitation arguably satisfies the first of the two-step inquiry of the SSR 16-3p analysis, the determination does not provide a plausible basis for rejecting Plaintiff' claims of limitation.   However, while the ALJ found that Plaintiff's "statements concerning [the] intensity, persistence, and limiting effects" of his condition were "not entirely consistent with the evidence," the following two-paragraph discussion of the treating records showing mostly continued neck, back, and upper extremity limitations does not provide insight into why Plaintiff's claims of limitation were rejected.

---

[5]

In addition to an analysis of the medical evidence, 20 C.F.R. §§ 404.1529(c)(3), 416.929 list the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Further, the ALJ's discussion of Plaintiff's testimony contains a misstatement.  The ALJ erroneously quoted Plaintiff  as saying that he was unable to lift even a gallon of milk (8.6 pounds) (Tr. 14).  However, Plaintiff actually testified that he dropped a gallon of milk due to gripping problems with his right hand, consistent with a November, 2016 diagnosis of CTS (Tr. 14, 58, 410).    His testimony did not contradict either Dr. Mohammed's consultative finding or Dr. Martone's treating opinion that he could lift up to 10 pounds.

 It is well established that an ALJ's credibility determination is generally entitled to controlling weight.  *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007)(*citing Walters v. Commission of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997)).  However, the ALJ's findings "must be reasonable and supported by substantial evidence."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).  The two-paragraph discussion of the medical records, discussed above, does not provide a rationale for the discounting Plaintiff's claims.  The determination is also undermined by the ALJ's mis-quote of the hearing testimony.  Because the ALJ's basis for rejecting claims is not clear from either the administrative opinion or my own review of the record, a remand for further proceedings on this basis is required.

Notwithstanding the above-discussed errors, an award of benefits is premature. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, I

recommend a remand for further administrative proceedings consistent with this Report.

## VI.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Docket #8] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response

must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Dated: July 30, 2019                           s/R. Steven Whalen
                                               R. STEVEN WHALEN
                                               UNITED STATES MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on July 30, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 30, 2019.

                                               s/Carolyn M. Ciesla
                                               Case Manager for the
                                               Honorable R. Steven Whalen